# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**DANIELLE M.,**[1]

        **Plaintiff,**                        **Case No. 2:20-cv-16554**
                                                **Magistrate Judge Norah McCann King**

    **v.**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

        **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Danielle M. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Acting Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

## I.       PROCEDURAL HISTORY

On June 1, 2018, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she has been disabled since May 25, 2017. R. 294−95, 324−25, 392−404. The applications were denied initially and upon reconsideration. R. 326−32, 336−38. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 349−63. Administrative Law Judge ("ALJ") Douglass Alvarado held a hearing on December 17, 2019, at which Plaintiff, who was represented by counsel,[3] testified, as did a vocational expert. R. 235−63. In a decision dated January 1, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 25, 2017, Plaintiff's alleged disability onset date, through the date of that decision. R. 121−35. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on September 23, 2020. R. 1 − 7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 21, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 11.[4] On that same day, the case was reassigned to the undersigned. ECF No. 12. The matter is ripe for disposition.

## II.      LEGAL STANDARD

### A.       Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

---

[3] Attorney Darren Suelto represented Plaintiff at the hearing. R. 235. Attorney Daniel Sylvester Jones represents Plaintiff in the action before this Court.

[4] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009)

(citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018

WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli*

*v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

4

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is

disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

###### B.     Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 44 years old on her alleged disability onset date. R. 133. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between May 25, 2017, her alleged disability onset date, and the date of the decision. R. 124.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease, vertigo, tinnitus, depression, anxiety disorder, post-traumatic stress disorder ("PTSD"), and substance use disorder in remission during period in issue. *Id*. The ALJ also found that the diagnosed impairments of endometriosis and irritable bowel syndrome were not severe, nor was her "possible diagnosis" of fibromyalgia.  R. 124–25.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 125–27.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 127–33. The ALJ also found that this RFC did not permit the

performance of Plaintiff's past relevant work as a financial aid counselor and accounts receivable clerk. R. 133.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.,* approximately 537,500 jobs as an inspector and hand packager; approximately 54,950 jobs as a photocopy machine operator; approximately 85,800 jobs as a sealing and canceling machine operator—existed in the national economy and could be performed by Plaintiff. R. 134−35. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 25, 2017, her alleged disability onset date, through the date of the decision. R. 135.

Plaintiff disagrees with the ALJ's findings at steps four and five and also argues that remand is warranted based on new and material evidence. Plaintiff asks that the decision be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 19; *Plaintiff's Reply Brief*, ECF No. 23. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 22.

## IV.    RELEVANT MEDICAL EVIDENCE

### A.    Matthew DeLuca, M.D.

On November 1, 2019, Matthew DeLuca, M.D., Plaintiff's treating neurologist, completed a four-page check-the-box and fill-in-the-blank form entitled "General Physical Residual Capacity Evaluation Questionnaire." R. 639−42. Dr. DeLuca diagnosed lumbar disc disease, hearing loss, cervical disc disease, and bladder incontinence; Plaintiff's prognosis was

characterized as "good." R. 639. Dr. DeLuca noted signs of tenderness, reflex changes, and

sensory changes, and specifically noted that Plaintiff had decreased sensation in her fingertips. R.

*Id*. In response to the question whether Plaintiff was a malingerer, Dr. DeLuca responded "No."

*Id*. He also denied that Plaintiff's emotional factors contributed to the severity of her symptoms

and functional limitations. R. 640. According to Dr. DeLuca, Plaintiff's impairments were

reasonably consistent with the symptoms and functional limitations described in the evaluation.

*Id*. He opined that Plaintiff's symptoms associated with chronic pain were sufficiently severe to

constantly interfere with attention and concentration. *Id*. Dr. DeLuca did not respond to the

question asking whether there were side effects of Plaintiff's medication. He opined that

Plaintiff's impairments lasted or could be expected to last at least twelve months. *Id*. Dr. DeLuca

also opined that, as a result of Plaintiff's impairments, she could walk one city block "with rest

or severe pain"; she could stand continuously for one hour at one time; and she could sit

continuously for eight hours at a time. *Id*. Plaintiff could occasionally (up to one-third of an 8-

hour workday) lift and carry ten pounds and frequently (one-third to two-thirds of an 8-hour

workday) lift and carry less than ten pounds. R. 641. Dr. DeLuca went on to opine that Plaintiff

could stand or walk for a total of less than two hours in an 8-hour workday and could sit for a

total of six hours in an 8-hour workday. *Id*. Plaintiff could frequently handle, finger, feel, see,

hear, speak; she could occasionally stoop, kneel, crouch, push/pull, reach; but she could never

climb, balance, or crawl. R. 641–42. Dr. DeLuca further identified the following environmental

restrictions caused by Plaintiff's impairments: heights, moving machinery, chemicals, dust, and

noise. R. 642. Dr. DeLuca's assessment addressed the period from July 3, 2019, to November 1,

2019. *Id.*

9

## B.      David Berkovitz, Ph.D.

On March 6, 2020, David Berkovitz, Ph.D., Plaintiff's treating psychologist, completed a five-page check-the-box and fill-in-the-blank form entitled "Psychiatric/Psychological Impairment Questionnaire." R. 64−68. Dr. Berkovitz had treated Plaintiff one or two times per month since December 12, 2018 and, most recently, in March 2020.[5] R. 64. He diagnosed major depression, generalized anxiety, and PTSD. *Id*. Plaintiff's medications were Abilify, Axium, Cymbalta, and Nuedexta. *Id*. Plaintiff had not required hospitalization or inpatient treatment for her symptoms and her course of treatment was consistent with the symptoms and limitations described in the questionnaire. *Id*. Plaintiff's diagnoses and limitations were expected to last at least twelve months; she was not a malingerer. R. 65. Dr. Berkovitz identified the following signs and symptoms that supported his diagnoses and assessment: depressed mood; persistent or generalized anxiety; constricted, irritable, flat affect; feelings of guilt or worthlessness; hostility or irritability; difficulty thinking or concentrating; easy distractibility; poor recent memory; intrusive recollections of a traumatic experience; recurrent panic attacks; anhedonia/pervasive loss of interests; appetite disturbances/weight change; change in personality; decreased energy; impulsive or damaging behavior; intense and unstable interpersonal relationships; social withdrawal or isolation; and poor sleep pattern at light/frequent waking. R. 65. When asked to identify which of these signs and symptoms are the most frequent and/or severe, Dr. Berkovitz wrote "suicidal ideation, irritability[.]" R. 66.[6] Dr. Berkovitz left blank the question asking him to discuss other clinical findings that support his diagnoses and assessment, including results of

---

[5] Dr. Berkovitz wrote that his most recent exam was "3/24/20," R. 64, which the Court assumes was in error because the he signed the form on March 6, 2020, R. 68.

[6] The Court notes that Dr. Berkovitz did not check the box marked "suicidal ideation" in the section asking him to identify Plaintiff's signs and symptoms. R. 65.

mental status examinations, psychological testing, etc. *Id*. Dr. Berkovitz denied that Plaintiff's psychiatric conditions exacerbated pain or any other physical symptoms and he indicated that she had not experienced episodes of decompensation or deterioration in a work or work-like setting that caused her to withdraw from the situation and/or experience an exacerbation of symptoms. *Id*. In response to the question whether Plaintiff had good days and bad days, Dr. Berkovitz checked the box marked "No" and wrote: "'Mostly Bad Rare good day[.]'" *Id*. Dr. Berkovitz estimated Plaintiff's ability to perform certain mental activities in a competitive environment on a sustained and ongoing basis (8 hours a day, 5 days per week) using the following scale: "None" (symptoms do not interfere with ability); "Mild" (symptoms rarely interfere with ability); "Moderate" (symptoms occasionally interfere with ability with "occasional" defined as up to one-third of an eight-hour workday); "Moderate-to-Marked" (symptoms frequently interfere with ability with "frequent" defined as one-third to two-thirds of an eight-hour workday); and "Marked" (symptoms constantly interfere with ability with "constant" defined as more than two-thirds of an eight-hour workday). R. 67. According to Dr. Berkovitz, Plaintiff had none to mild limitations in her ability to ask simple questions or request assistance; maintain socially appropriate behavior; adhere to basic standards of neatness; be aware of hazards and take appropriate precautions; and make plans independently; she had moderate limitations in her ability to remember locations and work-like procedures; understand and member one-to-two step instructions; carry out simple, one-to-two step instructions; perform activities within a schedule and consistently be punctual; make simple work-related decisions; and get along with coworkers or peers without distracting them; she had moderate-to-marked limitations in her ability to maintain attention and concentration for extended periods; interact appropriately with the public; and accept instructions and respond appropriately to criticism from supervisors; and she had

marked limitations in her ability to understand and remember detailed instructions; carry out detailed instructions; work in coordination with or near others without being distracted by them; complete a workday without interruptions from psychological symptoms; perform at a consistent pace without reset periods of unreasonable length or frequency; respond appropriately to workplace changes; travel to unfamiliar places or use public transportation; and set realistic goals. *Id*. Asked to identify other work-related limitations, Dr. Berkovitz responded, "Anxiety, social phobia[.]" R. 68. According to Dr. Berkovitz, Plaintiff was likely to be absent from work more than three times per month as a result of her impairments or treatment. *Id*. Asked if Plaintiff's symptoms and related limitations as detailed in the questionnaire apply as far back as May 25, 2017, Dr. Berkovitz responded, "N/A" and "I met her 10/14/18[.]" *Id*. Finally, Dr. Berkovitz indicated that Plaintiff's symptoms and functional limitations were reasonably consistent with the clinical and/or objective findings discussed in this report. *Id*.

In a letter dated March 29, 2020, Dr. Berkovitz noted that Plaintiff had been in treatment with him since December 2018 and that she comes for individual psychotherapy approximately two times per month. R. 61. After detailing Plaintiff subjective statements, history of sexual abuse by relatives and others, history of substance abuse, and social and educational history, Dr. Berkovitz stated:

> Soon after she got a job at Bloomfield College and began her college career, taking one course at a time. After 16 years she says she was within 3 courses of completion when she was fired from her job for "insubordination" (though it is not clear to her what she did wrong) and the impact was so traumatic she is unable to even enter Bloomfield college campus to complete her course work. This occurred in 2017.

> In sum, flashbacks, nightmares, and painful memories of her history of trauma persist to this day. She suffers from a variety of somatic complaints, including, chronic body and shoulder pain, fibromyalgia, neuropathy, balance control problems, sciatica pain, and undefined neurological issues.

> Current medication:   Ability 5 mg

12

> Ativan .5 mg TIO
> Duloxetine 120 mg
> Nuedexta 10 mg

> Base[d] on her history and her current physical/medical/psychological condition,
> Danielle, is extremely limited in her functional capacity. While intellectually and
> cognitively she is above average, her powers of concentration, focus, and memory
> are quite limited. Her prognosis for recovery is guarded and unlikely. She is unable
> to do full-time work; her disability has lasted beyond 12 months and I have every
> expectation it will continue as such. Please give her every consideration.

R. 62−63.

### C.    Johnson Babayemi, A.P.N.

On February 27, 2020, Johnson Babayemi, A.P.N., Plaintiff's treating nurse practitioner,

completed a five-page check-the-box and fill-in-the-blank form entitled

"Psychiatric/Psychological Impairment Questionnaire." R. 107−11. Nurse Babayemi had treated

Plaintiff on a monthly basis beginning on November 26, 2019, and most recently on February 27,

2020. R. 107. Nurse Babayemi diagnosed major depression, single episode; moderate PTSD; and

panic disorder. *Id*. Nurse Babayemi described Plaintiff's psychosocial factors as follows: "Pt was

born and raised by God parents in two households. Patient has 6 siblings but not in constant

communication. She [illegible] bad academic performances D's + F's. she had hx of sexual

molestation. She denied cognitive deficit or developmental milestones but socially will isolate."

*Id*. APN Babayemi identified Plaintiff's medication as Ability, Axium, and Cymbalta, all with

the side effect of "Tiredness[,]" and Nuedextra (no identified side effect). *Id*. He denied that

Plaintiff had required hospitalization or inpatient treatment for her symptoms and indicated that

Plaintiff's course of treatment had been consistent with the symptoms and limitations described

in the questionnaire. *Id*. Plaintiff's diagnoses and limitations were expected to last at least twelve

months and he denied that she was a malingerer. R. 108. He identified the following signs and

symptoms to support his diagnoses and assessment: depressed mood; persistent or generalized

13

anxiety; feelings of guilt or worthlessness; suicidal ideation; passive thoughts; difficulty thinking

or concentrating; intrusive recollections of a traumatic experience; anhedonia/pervasive loss of

interests; decreased energy; intense and unstable interpersonal relationships; social withdrawal or

isolation; and decreased need for sleep. *Id*. Nurse Babayemi identified tiredness, isolation, and

anhedonia as the most frequent and/or most severe signs and symptoms. R. 109. When asked to

discuss any other clinical findings that supported his diagnoses and assessment, Nurse Babayemi

responded, "The reported pain due to fibromyalgia, chronic shoulder pain. She persistently

cr[ies] unnecessarily. She continues to smoke even after preventative medication (Chantix)[.]"

*Id*. He denied that Plaintiff had a low I.Q. or reduced intellectual functioning but identified

Plaintiff's anxiety as a psychiatric condition that exacerbates pain or other physical symptoms.

*Id*. Asked whether Plaintiff experiences episodes of decompensation or deterioration in a work or

work-like setting, Nurse Babayemi responded in the affirmative, noting that Plaintiff had "lack

of interest, motivation, fatigue." *Id*. He also noted that she had good days and bad days. *Id*. Nurse

Babayemi went on to estimate Plaintiff's ability to perform certain mental activities in a

competitive environment on a sustained and ongoing basis (8 hours a day, 5 days per week)

using the following scale: "None" (symptoms do not interfere with ability); "Mild" (symptoms

rarely interfere with ability); "Moderate" (symptoms occasionally interfere with ability with

"occasional" defined as up to one-third of an eight-hour workday); "Moderate-to-Marked"

(symptoms frequently interfere with ability with "frequent" defined as one-third to two-thirds of

an eight-hour workday); and "Marked" (symptoms constantly interfere with ability with

"constant" defined as more than two-thirds of an eight-hour workday). R. 110. Plaintiff had none

to mild limitation in her ability to carry out simple, one-to-two step instructions; adhere to basic

standards of neatness; respond appropriately to workplace changes; and be aware of hazards and

take appropriate precautions; she had a moderate limitation in her ability to set realistic goals;

she had moderate-to-marked limitations in her ability to remember locations and work-like

procedures; understand and remember one-to-two step procedures; understand and remember

detailed instructions; maintain attention and concentration for extended periods; and sustain

ordinary routine without supervision; and she had marked limitations in her ability to perform

activities without a schedule and consistently be punctual; work in coordination with or near

others without being distracted by them; make simple work-related decisions; complete a

workday without interruptions from psychological symptoms; perform at a consistent pace

without rest periods of unreasonable length or frequency; interact appropriately with the public;

ask simple questions or request assistance; accept instructions and respond appropriately to

criticism from supervisors; get along with coworkers or peers without distracting them; maintain

socially appropriate behavior; travel to unfamiliar places or use public transportation; and make

plans independently. *Id.* Asked whether Plaintiff experienced any other work-related limitations,

Nurse Babayemi responded, "Excessive crying without cause." R. 111. According to Nurse

Babayemi, Plaintiff was likely to be absent from work more than three times per month as a

result of her impairments or treatment. *Id.* Asked whether Plaintiff's symptoms and related

limitations as detailed in the questionnaire applied as far back as May 1, 2017, Nurse Babayemi

responded, "seen at facility 4/2019," and he indicated that Plaintiff's symptoms and related

limitations applied to "4/11/2019[.]" Finally, Nurse Babayemi indicated that Plaintiff's

symptoms and functional limitations were reasonably consistent with the clinical and/or

objective findings discussed in his report. *Id.*

## V.      DISCUSSION

### A.      RFC and Opinion Evidence

Plaintiff contends that the ALJ's RFC determination was flawed because his

consideration of Dr. DeLuca's opinion was conclusory and insufficient under the applicable

regulations. *Plaintiff's Brief*, ECF No. 19, pp. 23−30.; *Plaintiff's Reply Brief*, ECF No. 23, pp.

1−2. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R.

§§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, the administrative law

judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c);

*see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not

treating or examining physicians or State agency consultants—must make the ultimate disability

and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has

a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*,

399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014)

(stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported

by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not

unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and

stating that "the ALJ also has the discretion to include a limitation that is not supported by any

medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to

perform a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the
> residual functional capacity to perform light work as defined in 20 CFR

404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs but she can never climb ladders, ropes and scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She can have occasional exposure to vibration; but can never be exposed to unprotected heights, hazardous moving mechanical parts or operate a motor vehicle. She can work in a moderate noise environment. She is able to understand, remember and carry out simple instructions with only occasional changes to essential job functions; is able to make simple work-related decisions; and can occasionally interact with supervisors, coworkers and the public.

R. 127. In making this determination, the ALJ detailed years of record evidence regarding Plaintiff's physical impairments, including, *inter alia*, that she has a history of low back pain since 1996, but an August 2016 X-ray of her cervical spine was unremarkable with no significant degenerative changes; she was treated for sciatic pain in the emergency room on September 14, 2018; in October 2018 and January 2019, she reported sharp, stabbing and throbbing pain intermittently radiating down the legs and made worse by excessive walking in place, and tenderness to palpation over the lumbosacral junction and the right SI joint, although it was noted that she had a normal range of motion in the lumbar spine, no other tenderness to palpation in the low back, intact strength, sensation and reflexes, negative straight leg raising, and an X-ray of the lumbosacral spine that showed normal alignment and normal appearing disk spaces; Plaintiff was diagnosed with lumbago and referred to physical therapy; a December 2018 MRI of lumbar spine showed mild disc bulging at L5-S1 effacing the anterior epidural fat with no evidence of disc herniation or spinal stenosis at any lumbar level and suggestive of nerve root sleeves cyst at L5-S1; an April 2019 MRI of the cervical spine that showed moderate disc bulging at C5-C6 and C6-C7 impressing on the anterior thecal sac and moderately narrowing the neural foramina as well as disc bulging at C4-C5 impressing on the anterior thecal sac and mildly narrowing the right neural foramen; a normal June 2019 electrodiagnostic study with no electrodiagnostic evidence of cervical radiculopathy, brachial plexopathy, median or ulnar neuropathy, peripheral polyneuropathy or myopathy; Dr. DeLuca's July 2019 neurological examination which revealed

decreased pinprick sensation in the fingertips of bilateral hands, 3+ reflexes with clonus in knee jerks and ankle jerks bilaterally; Dr. DeLuca suspected but did not affirmatively diagnose demyelinating disease; an August 2019 MRI of the brain that showed no evidence of signal abnormality or abnormal enhancement within the brain; evidence of vertigo and sensorium hearing loss following Plaintiff's June 2018 report of the sudden onset of persistent dizziness and intermittent episodes of motion associated with imbalance and binocular blurred vision lasting one-two minutes and described pressure in her head lasting for minutes, as well as intermittent bilateral tinnitus; the fact that Plaintiff underwent physical therapy for dizziness in July 2018; an August 2018 audiological evaluation revealed slight to mild sensorium neural hearing loss, but speech recognition ability was excellent bilaterally and speech in noise testing revealed a mild degree of impairment and was suggestive of benign paroxysmal positional vertigo; in 2019, Plaintiff reported that she had experienced various periods of vertigo lasting several hours to days at a time and had difficulty with balance on a persistent basis and difficulty with depth perception, as well as periods of diplopia and bilateral hearing loss with tinnitus; however, on August 29, 2019, Plaintiff's vertigo was noted to have resolved. R. 128–30.

The ALJ also considered years of record evidence regarding Plaintiff's mental impairments, including, *inter alia*, diagnoses of depression, anxiety, and PTSD; an August 2018 psychological consultative examination in which Plaintiff reported a long-standing history of mental health issues and three suicide attempts; feelings of helplessness, irritability, sleep problems and depressed mood as well as frequent panic attacks, which made her fearful of going outside, and which resulted in concentration difficulties and a desire to avoid social interaction; a mental status examination that found her to be alert and oriented in four spheres, able to recall three of three words immediately and after five minutes delay, with an adequate fund of general

18

knowledge, an ability to perform simple arithmetic calculations and repeat six digits forward and three digits backward, and an ability to spell and perform serial sevens with a single arithmetic error; she was diagnosed with major depressive disorder, panic disorder with agoraphobia, and alcohol use disorder; after a July 2019 neurological examination, Dr. DeLuca reported that Plaintiff could follow commands and had intact higher cognitive functions including short-term memory, object recall, judgment, similarities and abstractions; Plaintiff continued to present with depressed mood and affect in 2019. R. 130. The ALJ also noted Plaintiff's testimony that she had last worked May 25, 2017, and that she was let go from that job because she was accused of speaking out of turn at a meeting; there was no evidence that her activities of daily living were compromised due to a mental impairment, as she was able to groom herself, prepare simple meals, perform light chores, shop by computer, and manage her own money. R. 128, 131. The ALJ went on to explain his RFC determination as follows:

> The residual functional capacity accounts for the vocational limitations that would be placed upon the claimant based on her medically determinable impairments. Specifically, the claimant has provided evidence and testimony that she suffers from orthopedic disorders, vertigo, bilateral hearing loss and mental distress. It is reasonable that the claimant continues to experience some pain in her back and neck, mental distress and other limiting symptoms, due to her impairments and her complaints are granted every reasonable benefit of doubt in finding that she is limited to work at the light exertional level with additional limitations assessed above. The occasional climbing ramps and stairs, occasional balancing, stooping, kneeling, crouching and crawling but never climbing ladders, ropes or scaffolds also takes into consideration her back and shoulder issues. She is also diagnosed with vertigo and bilateral hearing loss. Therefore, I have included in the residual functional capacity that she cannot have more than occasional exposure to vibration; she can never be exposed to unprotected heights, hazardous moving mechanical parts or operate a motor vehicle and she can work in a moderate noise environment. Regarding her mental impairments, in assessing the residual functional capacity, I have considered the claimant's mild to moderate limitations under the B criteria. I have accounted for such mild to moderate limitations by limiting the claimant to understanding, remembering and carrying out simple instructions with only occasional changes to essential job functions, making simple work-related decisions and occasionally interacting with supervisors, coworkers and the public. However, I cannot find that the claimant's allegations of severe and

19

disabling physical and mental impairments, restrict her activities of daily living and her physical and mental conditions are stable.

Based on the foregoing, I find the claimant has the above residual functional capacity assessment, which is supported by the objective medical evidence contained in the record. Treatment notes in the record do not sustain the claimant's allegations of disabling impairments. Moreover, as outlined above she reported being able to perform some activities of daily living. Although the claimant has continually complained of pain in her back and other limiting symptoms, her treatment has been conservative in nature and by her own testimony she has not required any surgical procedures. Musculoskeletal examinations do not show any significant motor or sensory deficits. Straight leg raising was negative. There is no significant limitation of motion in the upper or lower extremities and she did not require the use of an assistive device. There is no evidence of psychosis, significant memory deficits or significant social abnormality. She reportedly maintains a relationship with her family. While her testimony is partially consistent with the evidence, the intensity and persistence is not supported by medical evidence. The claimant retains the ability to perform work within the parameters of the above residual functional capacity, which has been calibrated to accommodate her physical and psychological impairments.

R. 132−33. In the view of this Court, this record contains substantial evidence to support the

ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*,

186 F.3d at 429.

Plaintiff, however, challenges the ALJ's consideration of Dr. DeLuca's opinion when

crafting the RFC. *Plaintiff's Brief*, ECF No. 19, pp. 23−30; *Plaintiff's Reply Brief*, ECF No. 23,

pp. 1−2. In reaching the RFC determination, the ALJ was not "wholly persuaded" by Dr.

DeLuca's opinion, reasoning as follows:

On November 1, 2019, Dr. DeLuca reported that the claimant can lift and carry 10 pounds occasionally and less than 10 pounds frequently; can sit for eight hours continuously; can stand and walk for less than two hours but can continuously stand for 1 hour at a time. She did not need to alternate between sitting and standing. She can never climb, balance or crawl. She can occasionally stoop, kneel, crouch, push, pull and reach. She can frequently handle, finger, feel, see, hear and speak. She has environmental restrictions related to heights, moving machinery, chemicals, dust and noise. She would constantly experience symptoms associated with chronic pain sufficient to interfere with attention and concentration was frequently limited in her ability to deal with stress (Exhibit 18F). Although this opinion is offered by the claimant's own medical source, such limitations are not supported by the objective

20

clinical evidence in Dr. DeLuca's treatment records or the other medical evidence of record as noted above. Therefore, I am not wholly persuaded by this opinion.

R. 131–32. Plaintiff contends that this analysis was conclusory and therefore insufficient under the applicable regulations. *Plaintiff's Brief*, ECF No. 19, pp. 23–30.; *Plaintiff's Reply Brief*, ECF No. 23, pp. 1–2. Plaintiff's arguments are not well taken.

For claims filed after March 27, 2017,[7] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical

---

[7] As previously noted, Plaintiff's claim was filed on June 1, 2018.

evidence and supporting explanations presented by a medical source are to support his or her

medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical

opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1),

416.920c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent

a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)

or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulations further require an ALJ to articulate his "consideration of

medical opinions and prior administrative medical findings" and articulate in the "determination

or decision how persuasive [he] find[s] all of the medical opinions and all of the prior

administrative medical findings in [the claimant's] case record." *Id.* at §§ 404.1520c(b),

416.920c(b). "Specifically, the ALJ must explain how he considered the 'supportability' and

'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—

explain how he considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec.*, No. 1:19-

CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2)).

In the case presently before the Court, Plaintiff argues that the ALJ's analysis of Dr.

DeLuca's opinion is deficient under the applicable regulations because the ALJ simply stated in

conclusory fashion that this opinion was not supported by clinical and objective evidence, but

that evidence was otherwise unspecified, and because the ALJ failed to consider that this opinion

was consistent with the longitudinal treatment record. *Plaintiff's Brief*, ECF No. 19, pp. 23−30.;

*Plaintiff's Reply Brief*, ECF No. 23, pp. 1−2. Although it is true that the ALJ did not specify the

clinical and objective evidence that did not support Dr. DeLuca's opined limitations and did not

expressly discuss the consistency of that opinion, the Court is not persuaded that this procedural error requires remand. As set forth above, the ALJ detailed years of medical evidence, including, *inter alia*, Dr. DeLuca's neurological examination on July 3, 2019, which revealed that Plaintiff was able to follow commands and had intact higher cognitive functions, including short-term memory, object recall, judgment, similarities, and abstractions; the August 2019 MRI of the brain, ordered by Dr. DeLuca, which revealed no evidence of signal abnormality or abnormal enhancement within the brain parenchyma; Dr. DeLuca's statement that Plaintiff's vertigo had resolved by August 29, 2019; and "[m]uscuoloskeletal examinations [that did] not show any significant motor or sensory deficits." R. 129−30, 623 (reflecting Dr. DeLuca's examination on July 3, 2019, revealing, *inter alia*, a motor examination with 5/5 strength with normal tone and bulk). Moreover, and as summarized above, the ALJ's discussion also implicitly reflects his consideration of the inconsistency between Dr. DeLuca's opinion and other evidence in the record, including, *inter alia*, a normal June 2019 electrodiagnostic study that showed no evidence of cervical radiculopathy, brachial plexopathy, median, or ulnar neuropathy; the fact that Plaintiff was able to perform some activities of daily living, including grooming herself, preparing simple meals, performing light chores, shopping by computer, and managing her money; Plaintiff's conservative treatment; musculoskeletal examinations that did not show any significant motor or sensory deficits; negative straight leg raising tests; no significant limitation of motion in the upper or lower extremities; the fact that Plaintiff did not require an assistive device; the absence of evidence of psychosis, significant memory deficits or significant social abnormality; and the fact that Plaintiff apparently maintains a relationship with her family. R. 129−33. In light of the ALJ's extensive review of the record, the Court is able to meaningfully evaluate the ALJ's consideration of Dr. DeLuca's opinion under the regulatory framework and

finds that any procedural error in failing to specify the particular clinical and objective evidence that does not support Dr. DeLuca's opinion or in failing to expressly discuss the consistency of that opinion is therefore harmless in this case. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (stating that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record[,]" but that "[d]espite the ALJ's procedural error, we could affirm if 'a searching review of the record' assures us 'that the substance of the [regulation] was not traversed'") (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)) (cleaned up); *Ricky L. v. Comm'r of Soc. Sec.*, No. 20-CV-7102-FPG, 2022 WL 2306965, at *3–4 (W.D.N.Y. June 27, 2022) ("[I]t is clear from his decision that the ALJ considered the supportability and consistency of Dr. Sandler's opinion in the context of the other opinion evidence and the medical records and treatment notes. Thus, insofar as the Court can adequately 'glean' how the ALJ weighed the consistency and supportability factors for Dr. Sandler's opinion, . . . the Court finds the ALJ's procedural error harmless as 'the substance of the [regulation] was not traversed.'") (citations omitted); *Serrano v. Kijakazi*, No. CV 20-3985, 2021 WL 4477137, at *3–4 (E.D. Pa. Sept. 30, 2021) ("In this case, the ALJ discussed and analyzed the evidence extensively before determining the persuasiveness of the medical opinions. . . . The ALJ was not required to repeat this information for the sake of elaborating on her findings of persuasiveness.").

Although Plaintiff points to evidence that she believes shows that Dr. DeLuca's opinion is consistent with the "longitudinal treatment record," *Plaintiff's Brief*, ECF No. 19, p. 27, the

ALJ expressly acknowledged that some examinations noted abnormal results, including tenderness over the LS junction and right S1 joint, but the ALJ nevertheless credited the "many [examinations that] produced normal results." R. 130; *see also Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard].").

Plaintiff also complains that the ALJ failed to consider other regulatory factors when evaluating Dr. DeLuca's opinion, including the fact that this provider is a specialist in neurology and that he had treated Plaintiff "regularly over a longer period[.]" *Plaintiff's Brief*, ECF No. 19, p. 28. Plaintiff's argument is not well taken. As a preliminary matter, the ALJ specifically noted that Dr. DeLuca was Plaintiff's own medical source. R. 131. While the ALJ did not expressly note Dr. DeLuca's specialty and length of the treating relationship, the ALJ repeatedly referred to Dr. DeLuca's opinion and records (Exhibit 18F, R. 621–42), R. 124, 126, 129–31, which reflect, *inter alia*, that Dr. DeLuca is a diplomate of the America Board of Psychiatry and Neurology, and had treated Plaintiff in 2013 before seeing her again in 2019. R. 622, 628, 632. In any event, any failure by the ALJ to expressly discuss these factors does not require remand where, as here, a comprehensive review of the record provides substantial support for the ALJ's

evaluation of Dr. DeLuca's opinion. *See* 20 C.F.R. §§ 404.1520c(b)(2) (explaining that the factors of supportability and consistency "are the most important factors" and that an ALJ "may, but [is] not required to, explain how" he considered other regulatory factors, including relationship with the claimant, specialization, and other factors), 416.920c(b)(2) (same); *Jarrett v. Kijakazi*, No. CV 21-1607, 2021 WL 6136936, at *5 (E.D. Pa. Dec. 29, 2021) (finding that the ALJ "satisfied" his regulatory duties when he "explained that the treatment records were only partly consistent with and supportive of" the medical opinion because an ALJ "must only explicitly discuss the two most important factors: consistency and supportability").

Finally, Plaintiff complains that "[t]he foundation for these remarkably precise findings [in the RFC determination] is not specified" and that "the only logical conclusion is that the ALJ impermissibly interpreted the medical data into the RFC[, which] . . . is strictly disallowed in the Third Circuit." *Plaintiff's Brief*, ECF No. 19, pp. 29−30 (citing *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986)). The Acting Commissioner disagrees, arguing that no statutory or regulatory provision requires an ALJ to adopt, verbatim, a medical opinion or prior administrative medical finding when crafting the RFC and that it is the ALJ who has the responsibility for determining the RFC. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, No. 22, p. 12 (citing, *inter alia*, *Chandler*, 667 F.3d at 362). Plaintiff, however, insists that *Chandler* is distinguishable because, in that case, "there were no treating medical source opinions from an acceptable medical source before the ALJ, unlike here" and, therefore, the holding in *Doak* "that an ALJ cannot make an RFC finding without medical evidence supporting the finding applies[.]" *Plaintiff's Reply Brief*, ECF No. 23, pp. 1−2 (citations omitted). Plaintiff's arguments are not well taken.

As a preliminary matter,

> *Doak* does not stand for the proposition that an ALJ cannot make an RFC determination in the absence of a medical opinion reaching the same conclusion.

> Such a rule would be inconsistent the Third Circuit's express holding that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."[] Rather, the Court in *Doak* held that the ALJ's opinion was unsupported because nothing in the record, which consisted of testimony and three medical reports, justified the ALJ's conclusion. Contrary to Plaintiff's contention, the more recent, nonprecedential Third Circuit and district court opinions on which the R & R relies clarify, rather than contradict, *Doak*'s holding, and make clear that an ALJ is not restricted to adopting the conclusions of a medical opinion in making an RFC determination.

*Cleinow v. Berryhill*, 311 F. Supp. 3d 683, 685 (E.D. Pa. 2018) (footnotes omitted); *see also*

*Chandler*, 667 F.3d at 362 (rejecting the claimant's argument that the ALJ applied "his own lay

opinion" regarding medical evidence when crafting the RFC and stating that "the ALJ is not

precluded from reaching RFC determinations without outside medical expert review of each fact

incorporated into the decision"); *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006)

("There is no legal requirement that a physician have made the particular findings that an ALJ

adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is

part of the ALJ's duties."). As previously discussed, the ALJ sufficiently explained his

consideration of Dr. DeLuca's opinion in accordance with the applicable regulations and the

medical and other evidence as a whole when crafting the RFC. R. 127–33. Moreover, in light of

this record and caselaw, Plaintiff has not persuaded this Court that *Chandler* is inapposite. *See*

*Harkins v. Comm'r of Soc. Sec.*, No. CV 20-1728, 2022 WL 409490, at *1 (W.D. Pa. Feb. 10,

2022) (explaining that the interpretation that *Doak* does not require an ALJ's RFC findings to be

based on a particular medical opinion or that an ALJ may reject a medical opinion only as to

functional limitations based on another opinion is not only "consistent with a plain reading of

*Doak*, but it is also consistent with subsequent Third Circuit case law [of *Chandler* and

*Titterington*]" and that "there is no reason to strain the interpretation of *Doak* and its progeny so

as to create conflict with later case law where none is apparent or intended") (citations omitted);

*Cummings v. Colvin*, 129 F. Supp. 3d 209, 216 (W.D. Pa. 2015) ("In reality, however, these courts have read *Doak* too broadly, in effect forcing it into conflict with *Chandler* when no conflict actually exists.").

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does his consideration of Dr. DeLuca's opinion.

### B.    Subjective Complaints

Plaintiff also challenges the ALJ's consideration of her subjective complaints, contending that the ALJ's consideration of the record evidence was flawed because the medical evidence supports Plaintiff's complaints. *Plaintiff's Brief*, ECF No. 19, pp. 30−35. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181

28

F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[8]

---

[8] SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility."  SSR 16-3p.  However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered, in exhaustive fashion, Plaintiff's subjective complaints. R. 130–33. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 130. As previously discussed, the ALJ detailed years of medical evidence and record testimony to support this finding. R. 128–33. The ALJ also found that Plaintiff 's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the record "because although the record confirms that the claimant suffers from physical impairments with resulting limitations in functioning, the record fails to demonstrate that she was precluded from all work." R. 130; *see also* R. 131 (stating that regarding Plaintiff's "psychiatric complaints, the record confirms that the claimant suffers from psychological impairments with resulting limitations in functioning, but that she is for the most part, stable on medications[,]"; that "the more current evidence at Exhibits 14F, 15F, and 19F [R. 613–14, 643–71] fails to confirm the claimant's allegations of disability"; "there is no evidence that the claimant's activities of daily living are compromised due to a mental impairment, as she is able to groom herself, prepares simple meals, and performs light chores. She shops by computer and she is able to manage her own money"), 132–33 ("I cannot find that the claimant's allegations of severe and disabling physical and mental impairments[] restrict her activities of daily living and her physical and mental conditions are stable" and that although Plaintiff "has continually complained of pain in her back and other limiting symptoms, her treatment has been conservative in nature and by her own testimony she has not required any surgical procedures. Musculoskeletal examinations do not show any

significant motor or sensory deficits. Straight leg raising was negative. There is no significant limitation of motion in the upper or lower extremities and she did not require the use of an assistive device" and "[w]hile her testimony is partially consistent with the evidence, the intensity and persistence is not supported by medical evidence"). In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff challenges this finding, arguing first that there exist "extensive abnormalities" that support a finding of disability and that the "ALJ's reference to selected normal exam findings is improper." *Plaintiff's Brief*, ECF No. 19, p. 32. Plaintiff's argument is not well taken. As set forth above, the ALJ expressly acknowledged some abnormal results, but nevertheless decided to credit the "many [examinations that] produced normal results." R. 130. Based on this record, Plaintiff has not persuaded this Court that the ALJ engaged in impermissible cherry picking. *See Johnson*, 497 F. App'x at 201; *Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880.

Plaintiff next contends that the ALJ "improperly discounted" her subjective statements "regarding her mental impairments because records referred to her as 'stable' with treatment." *Plaintiff's Brief*, ECF No. 19, p. 33 (citations omitted). This Court disagrees. As a preliminary matter, as detailed above, the fact that Plaintiff's symptoms were characterized as "stable" on medication was only one factor that the ALJ identified when explaining why he discounted Plaintiff's subjective statements. R. 130–33. It is true that "stability does not equate to a specific medical condition. Indeed, someone can be stable with a chronic disabling malady or stable on a particular day or in a certain environment." *Nazario*, 794 F. App'x at 211. Similarly, the fact that

a claimant is "stable and well controlled with medication" does not necessarily establish that a claimant can return to work. *Morales*, 225 F.3d at 319 (internal quotation marks omitted). In the present case, however, and unlike the reasoning of the ALJ in *Morales*, the finding of the ALJ in this case "was based on the objective medical evidence contained in the psychotherapy treatment notes, and is not 'overwhelmed' by contrary evidence in the record." *Torres v. Barnhart*, 139 F. App'x 411, 415 (3d Cir. 2005) (citing *Morales*, 225 F.3d at 320); *cf. Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 121 (3d Cir. 2020) (finding that the ALJ was "entitled to discount" a treating source's earlier assessment "where it was undermined by the more 'detailed, longitudinal picture" provided by his later medical assessments[,]" which revealed that the claimant was "consistently calm and cooperative upon exam, and her prognosis was 'good'" and objective evidence supported the ALJ's finding that mental impairments did not prevent the claimant from engaging in substantial gainful activity where "she was consistently noted to be calm and cooperative, reportedly got along with immediate family, friends, and neighbors, could shop in stores by herself, attended community events, and had consistently normal findings with her cognition, memory, speech, judgment and insight"); *Hernandez v. Saul*, No. 4:19-CV-1263, 2020 WL 3412687, at *14 (M.D. Pa. June 22, 2020) ("Unlike in *Morales*, the ALJ in this case cited to evidence in the record including Plaintiff's mental health treatment records and the opinions of doctors Davis [consultative examiner] and Siegel [state agency reviewing physician] (to whose opinions he accorded great weight) before concluding that Plaintiff was not disabled. Accordingly, I am not persuaded that remand is required under *Morales*."); *Bucci for & on Behalf of Eland v. Saul*, No. CV 19-368, 2020 WL 709516, at *6 (W.D. Pa. Feb. 12, 2020) (affirming denial of benefits where "more than a scintilla of evidence supports the ALJ's conclusions[,]" including, *inter alia*, that "Plaintiff exhibited stable mental health when he

complied with medication"); *Adorno v. Berryhill*, No. CV 15-4269, 2017 WL 6731623, at *10 (E.D. Pa. Dec. 29, 2017) (finding that substantial evidence supported the ALJ's decision where, *inter alia*, the claimant did not cast "doubt on medical records showing that when she participated in "active psychotherapy," she was "relatively stable" and that "[u]nlike in *Morales*, there is no medical evidence clearly supporting a finding that [the claimant] is unable to work. Rather, [the claimant's] medical records support the ALJ's finding that she is able to work, albeit with limitations").

Plaintiff also insists that the fact that she can perform "some minimal activities of daily living does not contradict a finding of physical or mental disability[.]" *Plaintiff's Brief*, ECF No. 19, pp. 33–34. However, it was not improper for the ALJ to take these activities into account when assessing Plaintiff's subjective complaints and testimony. *See* 20 C.F.R. §§ 404.1529(c)(3)(i) (providing that the ALJ may consider a claimant's daily activities), 416.929(c)(3)(i) (same); *see also Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) ("The evidence from [the claimant's] doctors and the evidence regarding his daily activities . . . support the ALJ's finding with respect to [the claimant's] credibility."); *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity. . . and was permitted to consider them to evaluate the credibility of [the claimant's] subjective complaints of pain and other symptoms.") (citations omitted); *Loneker v. Comm'r of Soc. Sec.*, No. CV 17-2006, 2018 WL 5784996, at *4 (D.N.J. Nov. 5, 2018) ("The ALJ's decision is consistent with the Third Circuit's recognition that "[a]lthough 'any statements of the individual concerning his or her symptoms must be carefully considered,' the ALJ is not required to credit them," particularly where such statements are undermined by evidence of a

more active lifestyle.") (quoting *Chandler,* 667 F.3d at 363). Moreover, these activities were but one factor that the ALJ considered when assessing Plaintiff's subjective statements. R. 130−33.

Finally, Plaintiff contends that the ALJ erred when, in assessing her subjective complaints, he failed to consider "her honorable work history with sustained earnings every year for almost 25 years prior to the onset of her disability." *Plaintiff's Brief*, ECF No. 15, pp. 34−35. The Court is not persuaded that this issue requires remand. The United States Court of Appeals for the Third Circuit has upheld an ALJ's evaluation of a claimant's subjective complaints where the ALJ did not "explicitly discuss his years of uninterrupted employment[,]" but where the ALJ did explain why other evidence in the record belied the claimant's subjective complaints. *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 177 (3d Cir. 2015); *see also Forcinito v. Comm'r of Soc. Sec.*, No. CIV. 12-6940, 2014 WL 252095, at *9 (D.N.J. Jan. 23, 2014) ("[W]ork history is only one of many factors the ALJ may consider in assessing claimant's credibility. . . . Work history is not dispositive of credibility and the question of credibility is left to the ALJ's discretion after considering all of the relevant factors.") (citations omitted). Here, as noted above, the ALJ detailed why other record evidence undermined Plaintiff's subjective complaints. R. 130−33.

For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record. Those findings are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn,* 717 F.2d at 873); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004)

(finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). In short, this Court concludes that the ALJ's assessment of Plaintiff's subjective complaints  will not serve as a basis for remand of this action.

     **C.**     **Step Five**

     Plaintiff also challenges the ALJ's s step five determination, arguing that the Commissioner failed to carry his burden at that stage of the sequential evaluation process because the hypothetical questions posed to the vocational expert, which included the ALJ's RFC determination, failed to include all of Plaintiff's claimed limitations. *Plaintiff's Brief*, ECF No. 19, pp. 35−38.

     At step five, the ALJ must decide whether the claimant, considering the claimant's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). Unlike in the first four steps of the sequential evaluation, the Commissioner bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford,* 399 F.3d at 551). "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose [of determining whether other jobs exist in significant numbers in the national economy that the claimant could perform] . . . and factors to be considered include medical impairments, age, education, work experience and RFC.'" *Id*. at 205–06 (quoting *Rutherford*, 399 F.3d at 551). "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny*, 745 F.2d at 218. "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments

as the claimant can perform certain jobs that exist in the national economy." *Zirnsak*, 777 F.3d at 614 (citing *Podedworny*, 745 F.2d at 218). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id*. (cleaned up). A "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

In the case presently before the Court, the hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R 259. The vocational expert responded that the jobs of inspector and hand packager, photocopy machine operator, and sealing and canceling machine operator would be appropriate

for such an individual. R. 259−60. For the reasons discussed earlier in this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218; *see also Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 208−14 (3d Cir. 2019) (finding that a "simple tasks" limitation can be said to fairly reflect a claimant's "moderate" difficulties in concentration, persistence, or pace where there is a "valid explanation" for such limitation); *Russo v. Astrue*, 421 F. App'x 184, 192 (3d Cir. 2011) (finding "hypothetical question accurately conveyed all of" the plaintiff's limitations where the hypothetical individual could understand, remember, and carry out simple instructions, which reflected the plaintiff's moderate difficulties in concentration); *Menkes v. Astrue*, 262 F. App'x 410, 412–13 (3d Cir. 2008) ("The term 'simple routine tasks,' in the context of the disability proceedings, generally refers to the non-exertional or mental aspects of work. For example, performing a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration."). To the extent that Plaintiff's criticism of the ALJ's hypothetical question is that the question did not include all of her alleged impairments, this criticism boils down to an attack on the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already rejected for the reasons previously discussed.

In short, the Court finds that the Commissioner carried the assigned burden at step five of the sequential evaluation and concludes that substantial evidence supports the ALJ's determination in this regard.

### D.      Remand under Sentence Six

Finally, Plaintiff seeks remand of the action, pursuant to sentence six of 42 U.S.C. § 405(g), for consideration of alleged new and material evidence. *Plaintiff's Brief*, ECF No. 19, pp. 38−40. For the reasons that follow, Plaintiff's request is not well taken.

It is axiomatic "that evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). "[W]hen the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ (Sentence Six review)."*Id.* at 593; *see also* 42 U.S.C. § 405(g) (providing, *inter alia*, that a court may remand the case to the Commissioner and "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"). Evidence is "new" if it is "not merely cumulative of what is already in the record." *Szubak v. Sec'y of Health & Human Servs*., 745 F.2d 831, 834 (3d Cir. 1984) (citations omitted). "To be material, there 'must be a reasonable probability that the new evidence would have changed the outcome' of the Commissioner's decision." *Miller v. Comm'r Soc. Sec.,* 732 F. App'x 162, 165–66 (3d Cir. 2018) (quoting *Beety-Monticelli v. Comm'r of Soc. Sec.,* 343 Fed.Appx. 743, 747 (3d Cir. 2009) and *Szubak*, 745 F.2d at 833). Finally, a finding of "good cause" "requires 'some justification for the failure to acquire and present such evidence to the [Commissioner].'" *Szubak*, 745 F.2d at 833 (quoting *Brown v. Schweiker*, 557 F. Supp. 190, 192 (M.D. Fla. 1983)).

In the case presently before the Court, Plaintiff cites to documents from Dr. Berkovitz and Nurse Babayemi as the basis for her request to remand pursuant to sentence six; however, that evidence is dated after the ALJ rendered his decision on January 21, 2020. *Plaintiff's Brief*, ECF No. 19, pp. 38–40; *see also* R. 61–63 (Dr. Berkovitz's letter dated March 29, 2020), 64–69 (Dr. Berkovitz's questionnaire dated March 6, 2020), 107–11 (Nurse Babyemi's questionnaire dated February 27, 2020). Even assuming for the sake of discussion that this evidence is new and material, Plaintiff has nevertheless failed to carry her burden of showing good cause for her failure to present this or equivalent evidence to the ALJ. The United States Court of Appeals for the Third Circuit has observed that the "good cause" requirement associated with a sentence six remand request seeks to stop an "end-run method of appealing an adverse ruling by the [Commissioner]." *Szubak*, 745 F.2d at 834. *See also Lyons v. Berryhill*, No. CV 18-1106, 2019 WL 4094701, at *1 (W.D. Pa. Aug. 29, 2019) (quoting *Glover v. Comm'r of Soc. Sec.*, No. 1:09-cv-520, 2010 WL 2671291, at *5 (W.D. Mich. June 10, 1010) ("The sentence six 'good cause' requirement is not met by the solicitation of a medical opinion to contest the ALJ's decision.")); *Suarez v. Comm'r of Soc. Sec.*, No. 3:16-CV-02732, 2018 WL 2059553, at *9 (D.N.J. May 3, 2018) ("Plaintiff has made no showing of good cause for failure to produce the evidence to the ALJ, and it will not be considered here."); *cf*. 20 C.F.R. § 404.970(a)(5) (explaining that the following constitutes "good cause" for the Appeals Council to consider additional evidence: "(1) Our action misled you; (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or (3) Some other unusual, unexpected or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier"). Here, Plaintiff was represented by counsel throughout the administrative proceedings, including at the administrative hearing on

December 17, 2019. R. 115 (reflecting appointment of counsel, Attorney Lori Lembeck, dated February 10, 2020),  235 (reflecting that Attorney Darren Suelto represented Plaintiff at the administrative hearing), 343−46 (reflecting appointments of counsel−Attorneys Joseph Ginarta, Darren Suelto, Ellen Radin, and Manuel Gonzalez −dated November 17, 2018), Plaintiff has made no attempt to explain why neither she nor her former or current attorneys were able to obtain these or equivalent documents from Dr. Berkovitz and Nurse Babayemi prior to the date of the ALJ's decision. *See generally Plaintiff's Brief*, ECF No. 19, pp. 38−40. Similarly, Plaintiff has pointed to no request for an extension of time for submitting the equivalent of this evidence to the ALJ. *See id.*; *see also* R. 234−63 (reflecting no request for an extension during the administrative hearing on December 17, 2019). Notably, Plaintiff's present counsel concedes that "neither Dr. Berkovitz nor N.P. Babayemi provided such opinions until asked to do so by present counsel *after the date of the ALJ's decision*." *Plaintiff's Brief*, ECF No. 19, p. 39 (emphasis added). Based on this record, the Court cannot conclude that Plaintiff has established good cause for her failure to submit this evidence to the ALJ. *See Szubak*, 745 F.2d at 834; *Matos v. Kijakazi*, No. CV 21-02024 (FLW), 2022 WL 1134995, at *8 (D.N.J. Apr. 18, 2022) ("Ultimately, Plaintiff's good cause argument appears to boil down to either that current counsel disagrees with prior counsel's legal strategy to not obtain Dr. Paris's report, or that prior counsel was somehow negligent. Neither reason is adequate justification for submitting new evidence, and, in turn, is not good cause."); *Lyons,* No. CV 18-1106, 2019 WL 4094701, at *1 ("By her own admission, Plaintiff waited to obtain the Evaluation until finding out that the ALJ had denied her claim. It was her obligation, though, to present her best case to the ALJ, not to wait to see whether she liked his decision to decide whether to submit rebuttal evidence. Such 'sand-bagging' does not constitute good cause.") (citations omitted); *cf. Shuter v. Astrue*, 537 F. Supp.

2d 752, 759–60 (E.D. Pa. 2008) ("Plaintiff's unsubstantiated and unexplained claim that the failure to submit Dr. Squire's records was due to a 'misunderstanding between myself and my representative' does not rise to the level of good cause.") (citations omitted).

Accordingly, Plaintiff's request for remand pursuant to sentence six of 42 U.S.C. § 405(g), for consideration of new and material evidence is not well taken.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  August 16, 2022                            _s/Norah McCann King_____
                                           NORAH McCANN KING
                                           UNITED STATES MAGISTRATE JUDGE

41